<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARLEEN L. MOORE,<br><br>        Plaintiff,<br><br>        v.<br><br>IGT SOLUTIONS a/k/a GTECH CORP., NORTHSTAR LOTTERY GROUP LLC, JOSEPH OLESZIEWICZ, SCIENTIFIC GAMES, JAMES A. CAREY, N. ROBERT, K. MCCLEN, J. PASACUE,<br><br>        Defendants. | Case No. 2:18-cv-15183 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court are (1) Defendants Joseph Olesziewcz, New Jersey Lottery Executive Director James A. Carey ("Executive Director"), and Kevin McClendon ("McClendon"), improperly pled as "K. McClen" (collectively, "State Defendants") Motion to Dismiss Plaintiff Arleen L. Moore's ("Plaintiff") Amended Complaint (ECF No. 13) pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 115); and (2) Defendants IGT Global Solutions Corporation, improperly pled as "IGT Solutions" a/k/a GTECH Corp., Northstar New Jersey Lottery Group, LLC, improperly pled as "Northstar Lottery Group, LLC," and Scientific Games International, Inc., improperly pled as "Scientific Games" (collectively, "Corporate Defendants") Plaintiff's Amended Complaint (ECF No. 13) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (ECF No. 116.) Plaintiff submitted no opposition to State Defendants' and Corporate Defendants' (together, "Moving Defendants") Motions. Having reviewed the submissions filed in

---

[1] Defendant J. Pasacue did not join the Motions.

connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth herein and for good cause shown, Moving Defendants' Motions to Dismiss are **GRANTED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of the Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from Plaintiff's purchase of several "200 Million Cash Bonanza" instant game "scratch-off" lottery tickets in or about October or November 2017. (ECF No. 13 ¶ 7.) On May 19, 2018, Game #01437-044608-017 Serial Number #3993956346-1367- ticket number seventeen (17) was redeemed as a winner ("Ticket No. 17") along with several other instant game tickets. (*Id.* ¶ 8.)[2] On May 21 and 23, 2018, Plaintiff alleges the New Jersey Lottery Commission ("Commission") call center was contacted and stated that Ticket No. 17 was a winner. (*Id.* ¶¶ 9–10.) When asked how much the prize was, the call center representative stated, "Look at the ticket and see what 'numbers' or 'symbols match' and you'll see the value that correlates." (*Id.* ¶ 10.) As Plaintiff states, "However, the *ticket in question* failed to contain any 'matching number' or

---

[2] Despite alleging Ticket No. 17 was "redeemed as a winner," Plaintiff concedes Ticket No. 17 produced a validation receipt with the words "File Claim" on it. Plaintiff also concedes there was no prize amount listed on the receipt and that there were no numbers matching a winning number or matching symbols on Ticket No. 17. (*See* ECF No. 13 ¶¶ 8–10 ("The remaining instant game tickets did not redeem or validate as winning tickets . . . . However, the *ticket in question* failed to contain any 'matching numbers' or 'matching symbols.'").)

2

'matching symbols." (*Id.*) On June 19, 2018, Plaintiff filed a claim with the New Jersey Lottery ("Lottery") seeking a prize payment in connection to Ticket No. 17. (*Id.* ¶ 11.)

On June 26, 2018, Plaintiff alleged defendant J. Pasacue of the Lottery's Validation Division "negligently and fraudulently misrepresented the New Jersey State Lottery has received your lottery ticket," and "research of your ticket indicated it's not a winner," ("June 26, 2018 Denial"). (*Id.* ¶ 12.) In furtherance "of said negligent and fraudulent act(s)," McClendon, also from the Lottery's Validation Division, "intentionally and deliberately mailed [P]laintiff such letter materially misrepresenting the facts of the *ticket in question*." (*Id.* ¶ 13.) "Despite [P]laintiff's reliance on the deliberate, intentional, and malicious material misrepresentation[,] [P]laintiff filed a Notice of Appeal in the Superior Court Appellate Division," appealing the June 26, 2018 Denial. (*Id.* ¶ 14.) Thereafter, an investigator from the Lottery contacted Plaintiff and requested information concerning the alleged winning tickets. (*Id.* ¶ 15.) On August 15, 2018, "the Deputy Attorney General urged the withdrawal of the appeal and requested this matter be pursued internally and/or administratively with James A. Carey[,] Executive Director of the Lottery." (*Id.* ¶ 16.) In accordance, Plaintiff "sent a letter to the Appellate Division requesting" withdrawal of the Notice of Appeal. (*Id.* ¶ 17.)

On or about August 18, 2018, Plaintiff sought administrative review of the matter with the Executive Director. (*Id.* ¶ 18.) Plaintiff submitted an addendum in support, a letter brief, and several supporting documents. (*Id.* ¶ 19.) By letter dated October 9, 2018, the Lottery issued a decision ("Initial Decision") stating "lottery-security moved to verify the ticket's status from an 'official validation list' and a ticket reconstruction with the ticket's manufacture[r] [] confirmed the ticket as a non-winning ticket." (*Id.* ¶ 22.) The Lottery further stated the "'File Claim' status of [P]laintiff's ticket does not indicate the ticket in question was a winning ticket [] since none of

3

the validation receipt[s] indicated a prize amount no prize was ever won and their system worked as designed." (*Id.* ¶ 25.) After Plaintiff disputed the Initial Decision, the Executive Director held a hearing on April 18, 2019 and August 23, 2019. (ECF No. 95 at 4.) On January 15, 2020, the Executive Director issued a final decision ("Final Decision") finding Ticket No. 17 was not a winning ticket and denying payment of the $5 million prize. (*Id.* at 12–13, 18–20.)[3]

Despite the case's long and tortured history, the Court will provide a brief recount of the procedural history. On October 17, 2018, Plaintiff filed the original complaint in this Court against Moving Defendants alleging several violations pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 18 U.S.C. § 1341, New Jersey Product Liability Act, and several state law claims. (*See* ECF No. 1.) On February 28, 2019, Plaintiff filed an Amended Complaint against Moving Defendants alleging violations of 42 U.S.C. §§ 1983, 1985, 1986, 18 U.S.C. § 1341, New Jersey Product Liability Act, and several related state law claims, including fraud, conspiracy, breach of contract, and unjust enrichment. (ECF No. 13.) On March 7, 2019, Plaintiff filed a Motion to Amend the Complaint. (ECF No. 22.) On March 11, 2019, Magistrate Judge Tonianne Bongiovanni terminated the Motion to Amend and ordered Plaintiff's February 28, 2019 Amended Complaint (*see* ECF No. 13) "shall act as the operative Complaint." (ECF No. 28.)[4]

---

[3] Indeed, in reaching his decision, the Executive Director explained, "Moore's overarching claim that the Ticket she presented is a winning ticket is without merit. The Ticket on its face is not a winner. The reconstruction of the Ticket is proof that the Ticket is not a winner;" (ECF No. 95 at 14–15), and "[g]iven the substantial evidence in the record, and pursuant to the authority in N.J.S.A. 5:9-7(a) to determine winning tickets, I conclude that the Ticket is not a winner," (*id.* at 20).

[4] Specifically, Judge Bongiovanni reasoned "Plaintiff filed a Motion to Amend the Complaint without attaching a Proposed Amended Complaint . . . It appears as though the Proposed Amended Complaint at Docket Entry No. 13 was the Complaint meant to be associated with the motion at Docket Entry No. 22," therefore, "the motion at Docket Entry No. 22 is hereby terminated and the Proposed Amended Complaint at Docket Entry No. 13 shall act as the Operative Complaint." (ECF No. 28.)

On March 15, 2019, Plaintiff filed a Motion for Preliminary and Declaratory Injunctive Relief. (ECF No. 34.) On March 20, 2019, this Court denied Plaintiff's Motion for Preliminary and Declaratory Injunctive Relief because "Plaintiff has not demonstrated why injunctive relief is warranted in this litigation, let alone what specific relief she is seeking at this time." (ECF No. 43 at 2.) On March 28, 2019, Plaintiff filed a Motion for Reconsideration of the Court's order denying injunctive relief. (ECF No. 46.) On April 2, 2019, this Court denied Plaintiff's Motion for Reconsideration. (ECF No. 53.) On April 15, 2019, Plaintiff filed another Motion for Preliminary Injunctive Relief seeking to enjoin, *inter alia*, administrative hearings she alleges were undertaken in bad faith and that certain relevant documents were not disclosed to her resulting in a violation of her due process rights. (ECF No. 60.) On June 7, 2019, this Court denied Plaintiff's request for injunctive relief reasoning the "administrative hearing has already taken place and the request [to enjoin] may be moot. Plaintiff fails to establish a reasonable probability of eventual success in the litigation or that she will be irreparably injured if the unspecified relief is not granted." (ECF No. 80 at 2.) On August 17, 2020, Plaintiff filed a Motion for Leave to file an Amended Complaint. (*See* ECF Nos. 97, 104.) On March 4, 2021, Judge Bongiovanni denied Plaintiff's Motion to Amend because "Plaintiff's alleged facts do not support any plausible claim to a winning ticket," and therefore, the motion to amend is futile. (ECF No. 112.) On March 26, 2021, State Defendants filed a Motion to Dismiss. (ECF No. 115.) Corporate Defendants filed their Motion to Dismiss concurrently. (ECF No. 116.) Plaintiff did not file an opposition. On July 27, 2021, this Court noted "[t]o date, no opposition has been filed. If no opposition is received by August 10, 2021, the motions [to dismiss] will be considered unopposed." (ECF No. 117.)

**II.     LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "further factual enhancement[s]" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor are they compelled to accept "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [into one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III.  DECISION

Moving Defendants argue Plaintiff's claims must be dismissed because, *inter alia*, Plaintiff failed to appeal a final agency decision to the New Jersey Appellate Division. (*See* ECF No. 115-1 at 24; ECF No. 116-1 at 23.) Specifically, according to Moving Defendants:

> Moore pursued her claim that she possessed one of the three top-prize tickets in a proceeding before the New Jersey Lottery Division over which [Executive Director] presided, and those proceedings culminated in a final agency decision that directly addressed – and rejected – Moore's claim. Plaintiff had the right to appeal that Final Decision under the New Jersey Court Rules (*R.* 2:2- 3(a) (2)), but

7

> she chose not to do so. *Wright v. The Prudential Ins. Co. of Am.*, 285 F. Supp. 2d 515, 521 (D.N.J. 2003) (citing *R.* 2:2-3(a)(2) as providing Appellate Division review of "final decisions or actions of any state administrative agency or officer"); *see also In re Failure by the Dep't of Banking & Ins. to Transmit a Proposed Dental Fee Schedule to OAL*, 336 N.J. Super. 253, 261 (App. Div. 2001) ("The exclusive method for review of action or inaction of a State administrative agency . . . is by direct appeal to [the Appellate Division] pursuant to *R*. 2:2-3(a)(2).") (citation omitted).
>
> Moore thus had a full and fair opportunity to pursue her claim, and to appeal the adverse decision that rejected it, and a final judgment has been rendered on the same claim that she presents here about her alleged possession of a $5M-winning ticket. As shown herein, this final outcome in the state proceedings precludes Moore from pursuing the identical central claim in this Court, because the prior judgment on the issue collaterally estops her from pursuing her nearly-identical federal claim.

(ECF No. 115-1 at 24–25.) The Court agrees Plaintiff's failure to appeal the Final Decision to the New Jersey Appellate Division is fatal to Plaintiff's claims.

The Lottery is a state agency that has procedures under the New Jersey Administrative Procedures Act to govern how lottery tickets, including Ticket No. 17, are validated and how to handle disputes that arise over whether a ticket is a winner. Indeed,

> [i]n the event that a dispute arises involving the ownership of a winning ticket or the validity of such a ticket, the Director shall treat the matter as a contested case within the meaning of the Administrative Procedures Act, *N.J.S.A.* 52:14B-1 *et seq.*, and 52:14F-1 *et seq.,* and *N.J.A.C.* 1:1. Such treatment shall also be afforded with respect to the denial of a claim of entitlement to a lottery prize, in the Director's discretion.

N.J. Admin. Code § 17:20-3.1(a).

Here, after Plaintiff disputed the Initial Decision, the Lottery, consistent with the Administrative Code, investigated Plaintiff's claim, held hearings when Plaintiff protested the initial claim denial that allowed her the opportunity to present evidence, and issued a Final Decision that included details about the reasons for the denial. (*See* ECF No. 95.) This decision

8

constituted a final agency action, and Plaintiff did not appeal this final decision within the required 45-day period. *See* N.J. Admin. Code. § 52:14B-12 ("Whenever under statute or agency rule there is a mode of administrative review within an agency, such review shall remain unimpaired and any judicial review shall be from the final action of the agency."); N.J. Ct. R. 2:4-1(b). The time to appeal has long expired, *see* N.J. Ct. R. 2:4-1(b) ("Appeals from final decisions or actions of state administrative agencies or officers . . . shall be filed within 45 days from the date of service of the decision or notice of the action taken."), therefore, Plaintiff's claims are dismissed. *See Moore v. GTech Corp.*, Civ. A. No. 18-15183, 2021 WL 825404, at *2 (D.N.J. Mar. 4, 2021).

IV.     **CONCLUSION**

For the reasons set forth above, Moving Defendants' Motions to Dismiss are **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED with PREJUDICE**.[5]

Dated: September 20, 2021

                                                        */s/ Brian R. Martinotti*
                                                        **BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**

---

[5] The Court finds dismissal with prejudice is proper here because Plaintiff cannot further amend the complaint to cure the deficiencies described above. *See Credico v. CEO Idaho Nat. Lab'y*, 461 F. App'x 78, 79 (3d Cir. 2012) (affirming district court's dismissal of plaintiff's complaint "without . . . leave to amend as any amendment would have been futile"); *Redmond v. Fresh Grocers Store*, 402 F. App'x 685, 686 (3d Cir. 2010) (same); *IpVenture Inc. v. Lenovo Grp. Ltd.*, Civ. A. No. 11-588, 2013 WL 126276, at *3 (D. Del. Jan. 8, 2013) (choosing to dismiss claims with prejudice after dismissing the same allegations without prejudice in an earlier action because it was "clear that [p]laintiff cannot satisfactorily amend its [c]omplaint").

Further, "[e]ven though all [d]efendants did not join in the [M]otions to [D]ismiss Plaintiff[']s [Amended] Complaint, because the Court's reasoning applies broadly to all [d]efendants, the [M]otions to [D]ismiss are granted as to all [d]efendants, [including defendant J. Pasacue.]" *Roloff v. Christie*, Civ. A. No. 15-1432, 2016 WL 164612, at *1 n.1 (D.N.J. Jan. 13, 2016); *Steinhardt v. Bernardsville Police Dep't*, Civ. A. No. 172169, 2020 WL 5204066, at *7 (D.N.J. Aug. 31, 2020), *aff'd*, Civ. A. No. 20-2825, 2021 WL 3929321 (3d Cir. Sept. 2, 2021); *Eun Ju Song v. Bank of Am., N.A.*, Civ. A. No. 2:14-3204, 2015 WL 248436, at *3 (D.N.J. Jan. 20, 2015) (providing that "a court dismissing claims against moving defendants may *sua sponte* dismiss claims against non-moving defendants" and dismissing claims against non-moving defendants with prejudice).